UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 6402

------------------------------------------------------------X   Case No.

IVANA HIDALGO,

                      Plaintiff,                                        **COMPLAINT**

                      - against -

B & B HOSPITALITY GROUP LLC,
TARRY FINE FOODS, LLC d/b/a *"TARRY MARKET,"*
MORGAN PRUITT, *Individually*, and
LESLIE MCLEAN, *Individually*,

                    PLAINTIFF DEMANDS
                    A TRIAL BY JURY

                      Defendants.

------------------------------------------------------------X

Plaintiff, IVANA HIDALGO, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. § 12101, *et seq.* ("ADA") and the <u>New York State Human Rights Law</u>, New York State Executive Law §296, *et. seq.* ("NYSHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Discriminated against**, **Retaliated against**, and **Terminated** by her employer solely due to her **Disability (Leg Length Inequality)**.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et. seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as Defendants reside within the Southern District of New York, and the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated August 30, 2013, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. That at all times relevant hereto, Plaintiff IVANA HIDALGO ("HIDALGO") is a resident of the State of New York and County of Westchester.

9. That at all times relevant hereto, Defendant B&B HOSPITALITY GROUP, LLC ("B&B") is a domestic limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 45 East 20th Street, New York, New York 10003.

10. That at all times relevant hereto, Defendant TARRY FINE FOODS, LLC ("TARRY") is a domestic limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 179 North Main Street, Port Chester, New York 10573.

11. That at all times relevant hereto, Defendant TARRY does business as "Tarry Market."

12. That at all times relevant hereto, Defendant B&B owned, operated, managed, and controlled Defendant TARRY.

2

13. That at all times relevant hereto, Plaintiff HIDALGO was an employee of Defendant TARRY and Defendant B&B.

14. Upon information and belief, at all times material, Defendant MORGAN PRUITT ("PRUITT") was an employee of Defendant TARRY and Defendant B&B, holding the position of "General Manager" of Tarry Market.

15. That at all times relevant hereto, Defendant PRUITT was Plaintiff HIDALGO's supervisor and/or had supervisory authority over Plaintiff HIDALGO.

16. Upon information and belief, at all times material, Defendant LESLIE MCLEAN ("MCLEAN") was an employee of Defendant TARRY and Defendant B&B, holding the position of "General Manager" of Tarry Market.

17. That at all times relevant hereto, Defendant MCLEAN was Plaintiff HIDALGO's supervisor and/or had supervisory authority over Plaintiff HIDALGO.

18. That at all times relevant hereto, Defendant B&B, Defendant TARRY, Defendant PRUITT, and Defendant MCLEAN are collectively referred to herein as "Defendants."

## MATERIAL FACTS

19. On or about November 3, 2010, Plaintiff HIDALGO began working for Defendants as a member of the "Floor Staff" at Tarry Market, earning approximately $11.00 per hour.

20. From the day Plaintiff HIDALGO began her employment with Defendants, Plaintiff HIDALGO was an exemplary employee and always received compliments for her work performance.

21. However, **when Plaintiff HIDALGO notified Defendants of her disability (Leg Length Inequality)** and requested a reasonable accommodation for this disability,

Defendants wholly **refused to provide Plaintiff HILDALGO a reasonable accommodation** for her disability, and furthermore, then retaliated against her by unlawfully terminating her employment.

22. Due to extensive orthopedic surgery resulting from a car accident and broken foot, **Plaintiff HIDALGO's right femur is about an inch shorter than the left, and her left tibia/fibula is about an inch shorter than the right**.

23. Moreover, as a member of Defendants' "Floor Staff," Defendants had always provided Plaintiff HIDALGO with a stool on which she could sit and/or lean whenever her disability would flare up.

24. However, in or about February/March 2011, Defendants suddenly removed all stools from the work stations, claiming that they could not justify people sitting while at work.

25. As such, in or about March/April 2011, Plaintiff HIDALGO explained her disability in detail to Defendant PRUITT and **requested that she be allowed to temporarily sit on, and/or lean against, a stool as a reasonable accommodation for her disability**. However, Defendants arbitrarily wholly refused to accommodate her disability.

26. Accordingly, on or about April 29, 2011, Plaintiff HIDALGO sent Defendant PRUITT an email stating, "I use the stool only for very short periods, usually during which I am looking at what next to do or just giving my feet and/or back a needed change of stress points, while remaining fully attentive to incoming peeps. ... I had pretty major surgery over a year and a half after an accident that broke many bones, including both legs. Suffice to say it left me with a sort of uneven frame, or potentially so, from uneven leg lengths due to the later surgeons' very successful efforts (I still have both legs; still metal in one). Anyway it can and does cause back pain if I stand or walk on flat ground for

long periods. I also broke my right foot which did not heal properly."

27. However, although Plaintiff HIDALGO was trying to be patient and keep a positive attitude, **Defendants still nonetheless wholly refused to accommodate Plaintiff HIDALGO's disability** by failing to provide Plaintiff HIDALGO with a stool.

28. For the following year, while Plaintiff HIDALGO continued to plead with Defendants for a stool on which she could lean as a reasonable accommodation for her disability, it was to no avail.

29. As part of Plaintiff HIDALGO's job duties, Plaintiff HIDALGO was also responsible to close the store, which involved wrapping and transporting trays of food and bringing them to the back of the walk-in refrigeration units, and refilling and wrapping the fresh pasta case (each case had 3 shelves). All of these duties involved a lot of bending, heavy lifting, pushing, and walking on the concrete floors, all of which only exacerbated Plaintiff HIDALGO's disability.

30. In fact, due to Defendants' complete failure to accommodate Plaintiff HIDALGO's disability, Plaintiff HIDALGO was preliminarily diagnosed with **"Cervical Radiculitis,"** a condition that involves the irritation or impingement of one or more cervical spinal nerves, or in other words, nerve roots that branch off the spinal cord in the neck area. Symptoms of cervical radiculopathy often include shooting pain, tingling, numbness, and muscle weakness that affect the neck, upper back, shoulders, arms, hands, and/or fingers.

31. In addition, Plaintiff HIDALGO was trying different shoes and shoe inserts throughout her employment and had even been taking up to 400 mg of ibuprofen every three (3) to four (4) hours, but was unfortunately still in pain.

32. Accordingly, on or about April 10, 2012, Plaintiff HIDALGO provided Defendants with a

letter from her doctor, Thomas Yuen, MD, stating, "Ms. Hidalgo was seen today for back and leg-foot pains, she has been advised that this may be related to her job duties and if accommodations can be made **such as having a tall stool at her work station** that would assist in her healing process." Quite shockingly, even after receiving a letter from Plaintiff HIDALGO's personal physician, Defendants still refused to provide her with a stool as a reasonable accommodation.

33. Since Defendants wholly refused to provide Plaintiff HIDALGO with a stool, Plaintiff HIDALGO began to brainstorm alternative reasonable accommodations for her disability.

34. For example, on or about June 27, 2012, Plaintiff HIDALGO emailed Mark Coscia, in which she stated, **"Given that a stool is not possible, I seem unable to work two consecutive 8 hour days on the floor until more healing has been allowed for my back, etc.** It might behoove the purpose of this note to make you aware that I called in sick - for the first time ever - a week ago last Tuesday the 19th, because I simply could not move, and had to visit my acupuncturist."

35. The following day, on or about June 28, 2012, Plaintiff HIDALGO emailed Defendant PRUITT, in which she requested, "Please allow me to come in at 2pm on Fridays, and certainly 12pm on Sundays; I can then do the 8 hour shift on Saturdays as well as on Tuesdays and Wednesdays, given adequate break time. I do look forward to understanding what you have in mind for small projects off the floor, if indeed this is what you had in mind. That may certainly help depending on what it is, and I appreciate it."

36. However, rather than reasonably accommodating Plaintiff HIDALGO's disability, **on or about July 18, 2012, without any warning, Defendant MCLEAN instead suddenly**

terminated Plaintiff HIDALGO's employment because she "was absent three (3) times over the past month and wasn't setting an example for other employees."

37. This reason was obviously **pretextual**, as Plaintiff HIDALGO was only absent three (3) times over the past month due to severe pain arising from Plaintiff HIDALGO's disability, and Defendants' failure to accommodate that disability.

38. In fact, at the same time, Defendant MCLEAN even told Plaintiff HIDALGO that **no stool would have been possible** and that Defendants had been accommodating her as much as they could.

39. Defendant MCLEAN then had the audacity to tell Plaintiff HIDALGO, in the presence of Nick O'Keefe (Manager), that **"there was nothing that happened to you that did not happen to me. I also had all kinds of sports injuries."**

40. Defendant MCLEAN then told Plaintiff HIDALGO that she should go on disability leave and collect unemployment benefits.

41. Plaintiff HIDALGO was unequivocally stunned that she was being terminated solely due to her disability, as she was ready and able to perform her job duties with a reasonable accommodation.

42. **Rather than discussing possible ways to accommodate Plaintiff HIDALGO's disability in the future, Defendants figured it was easier to simply terminate Plaintiff HIDALGO's employment.**

43. Furthermore, Defendants never even attempted to engage in any interactive process to try and figure out a way to accommodate Plaintiff HIDALGO's disability in a way that would enable her to continue her employment with Defendants.

44. Based on Defendants' discriminatory and retaliatory treatment of Plaintiff HIDALGO, as

well as the aforementioned suspicious actions, **it is clear that Defendants discriminated against, and terminated the employment of, Plaintiff HIDALGO solely due to her disability and in retaliation for requesting a reasonable accommodation.**

45. Upon information and belief, Defendants did not like the fact that Plaintiff HIDALGO was disabled and thus began a discriminatory campaign against her, all in an effort to set Plaintiff HIDALGO up for termination.

46. Upon information and belief, Defendants were also apparently apprehensive about keeping a disabled employee due to potential future absences.

47. Upon information and belief, Defendants also clearly but falsely believed that Plaintiff HIDALGO's disability would interfere with her ability to perform her job duties in the future.

48. Plaintiff HIDALGO's condition is an impairment that substantially limits one or more of her major life activities within the meaning of §12102(1)(A) of the ADA.

49. Plaintiff HIDALGO is a qualified individual who can perform the essential functions of her employment with a reasonable accommodation as defined by § 12111(8) of the ADA.

50. **But for the fact that Plaintiff HIDALGO was disabled and had requested a reasonable accommodation for her disability, Defendants would not have treated her differently and would not have terminated her employment.**

51. Plaintiff HIDALGO felt offended, disturbed, and demeaned by the blatantly unlawful and discriminatory termination.

52. Plaintiff HIDALGO's performance was, upon information and belief, above average during the course of her employment with Defendants.

53. Plaintiff HIDALGO has been unlawfully discriminated against, retaliated against,

8

humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

54. **Defendants' actions and conduct were intentional and intended to harm Plaintiff HIDALGO.**

55. As a result of Defendants' actions, Plaintiff HIDALGO feels extremely distraught, degraded, victimized, and emotionally distressed.

56. As a result of the Defendants' discriminatory treatment of Plaintiff HIDALGO, she has suffered severe emotional distress and physical ailments.

57. As a result of the acts and conduct complained of herein, Plaintiff HIDALGO has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff HIDALGO has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff HIDALGO further experienced severe emotional and physical distress.

58. As a result of the above, Plaintiff HIDALGO has been damaged in an amount in excess of the jurisdiction of the Court.

59. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff HIDALGO demands Punitive Damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)

60. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were

more fully set forth herein at length.

61. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

62. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

63. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability.

64. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)

65. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

66. The ADA prohibits retaliation, interference, coercion, or intimidation.

67. 42 U.S.C. § 12203 provides:

   a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of,

any right granted or protected by this chapter.

68. Defendants violated this section as set forth herein.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER NEW YORK STATE EXECUTIVE LAW

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

71. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER NEW YORK STATE EXECUTIVE LAW

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

74. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise

11

discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

77. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### JURY DEMAND

78. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act and the New York State Executive Law §296, *et. seq.*, in that Defendants discriminated against Plaintiff on the basis of her disability and retaliated against Plaintiff for requesting a reasonable accommodation for her disability;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants'

unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       September 9, 2013

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _/s/ Jesse C. Rose_

Jesse C. Rose, Esq.
Of Counsel
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431

| EEOC Form 161-B (11/09) | **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** |
|---|---|

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Ivana Hidalgo<br>9 Mill Street<br>Port Chester, NY 10573 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2013-01754 | Debra L. Richards, Investigator | (212) 336-3768 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
District Director

8/30/13
(Date Mailed)

Enclosures(s)

cc: Director of Human Resources
B&B HOSPITALITY GROUP, LLC
45 East 20th Street
New York, NY 10003

Jesse C. Rose
PHILLIPS & ASSOCIATES
45 Broadway, Suite 620
New York, NY 10006